UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Lead Case No. 0:26-cv-60956-LEIBOWITZ

In re DHL TARIFF LITIGATION

(Consolidated with Case No. 0:26-CV-61015-LEIBOWITZ)

This Document Relates To:

ALL ACTIONS.

CLASS ACTION

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 3

A. The FAAAA Does Not Preempt Plaintiffs' Claims ..... 3

B. Plaintiffs Adequately Plead Each of Their Claims ..... 9

1. Plaintiffs State Valid Claims for Unjust Enrichment and Money Had and Received ..... 9

2. Plaintiffs Adequately Plead Their Conversion Claim ..... 13

3. Plaintiffs' FDUTPA Claim is Well-Pleaded ..... 16

4. Plaintiffs Properly Assert Entitlement to Declaratory Judgment ..... 18

C. The Court Should Not Stay the Claims ..... 19

V. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Al Rushaid Petrol. Inv. Co. v. Siemens Energy Inc.*
159 F.4th 887 (11th Cir. 2025) ....................10

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)....................4

*Bailey v. Rocky Mtn. Holdings, LLC*,
889 F.3d 1259 (11th Cir. 2018) ....................9

*Belford Trucking Co. v. Zagar*,
243 So. 2d 646 (Fla. 4th DCA 1970)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ....................9

*Broward Cnty. v. Mattel*,
397 So. 2d 457 (Fla. 4th DCA 1981)....................11

*Century Importers, Inc. v. United States*,
205 F.3d 1308 (Fed. Cir. 2000)....................5

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
2009 WL 723149 (S.D. Ohio Mar. 16, 2009)....................9

*Christie v. Royal Caribbean Cruises*,
497 F. Supp. 3d 1227 (S.D. Fla. 2020) ....................15

*Cnty. of Monroe, Fla. v. Priceline.com, Inc.*,
2009 WL 4890664 (S.D. Fla. Dec. 17, 2009)....................14

*Coleman v. CubeSmart*,
328 F. Supp. 3d 1349 (S.D. Fla. 2018) ....................17

*Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Miami Beach*,
2023 WL 11822208 (S.D. Fla. Mar. 7, 2023)....................19

*CRST Dedicated Servs., Inc. v. Ingersoll-Rand Co.*,
194 F. Supp. 3d 426 (W.D.N.C. 2016) ....................9



4936-6519-1629.v1

**Page**

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013)....4, 5, 8

*Danielson v. Inslee*,
945 F.3d 1096 (9th Cir. 2019) ....13

*DHL Express (USA), Inc. v. U.S. Dep't of the Treasury*,
No. 1:26-cv-01824 (Ct. Int'l Trade Mar. 13, 2026), ECF 2 ....2

*Donoghue v. Wallach*,
455 So. 2d 1085 (Fla. 2d DCA 1984)....5

*Dorman v. Aronofsky*,
36 F.4th 1306 (11th Cir. 2022) ....3

*Easter v. City of Orlando*,
249 So. 3d 723 (Fla. 5th DCA 2018)....11

*F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*,
311 So. 3d 39 (Fla. 4th DCA 2021)....11

*Fahrenbach v. Green Planet Movers*,
682 F. Supp. 3d 109 (D. Mass. 2023)....8

*Fruitstone v. Spartan Race Inc.*,
464 F. Supp. 3d 1268 (S.D. Fla. 2020) ....18

*Galstaldi v. Sunvest Communities USA, LLC*,
637 F. Supp. 2d 1045 (S.D. Fla. 2009) ....16

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ....16

*Harris v. Gonzalez*,
789 So. 2d 405 (Fla. 4th DCA 2001)....15

*Hentz v. Kimball Transp., Inc.*,
2018 WL 5961732 (M.D. Fla. Nov. 14, 2018) ....5, 6

*In re Egidi*,
571 F.3d 1156 (11th Cir. 2009) ....18

*Innovative Vehicle Sols. W., LLC v. Renntech, Inc.*,
2022 WL 3137029 (S.D. Fla. June 16, 2022)....11

*Jana Brands, Inc. v. C.H. Robinson, Int'l, Inc.*,
2018 WL 6697680 (D. Mass. Dec. 20, 2018)....6

**Page**

*Joe Hand Promotions, Inc. v. Sorota*,
2012 WL 2414035 (S.D. Fla. June 26, 2012) .....14

*Johnson v. Chase Bankcard Servs., Inc.*,
582 F. Supp. 3d 1230 (M.D. Fla. 2022) .....15

*Joseph v. Chanin*,
940 So. 2d 483 (Fla. 4th DCA 2006) .....16

*Latman v. Costa Cruise Lines*,
758 So. 2d 699 (Fla. 3d DCA 2000) .....17

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026) .....2

*Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*,
558 F.3d 1301 (11th Cir. 2009) .....3

*Louis M. Marson Jr., Inc. v. All. Shippers, Inc.*,
438 F. Supp. 3d 326 (E.D. Pa. 2020) .....9

*Maor v. Dollar Thrifty*,
303 F. Supp. 3d 1320 (S.D. Fla. 2017) .....17, 18

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) .....18

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*,
992 F.2d 1171 (11th Cir. 1993) .....3

*Martin v. DHL Express (USA), Inc.*,
580 F. Supp. 3d 66 (D.N.J. 2022) .....7

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) .....4

*Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*,
2014 WL 979065 (S.D. Fla. Mar. 13, 2014) .....10, 15

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .....4, 6

*Mullenmaster v. Newbern*,
679 So.2d 1186 (Fla. 4th DCA 1996) .....14

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) .....4

**Page**

*Newton v. Brighthouse Life Ins. Co.*,
2021 WL 2604654 (N.D. Ga. Mar. 11, 2021)....19

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014)....4

*Phillips v. Keystone Moving Grp., LLC*,
2021 WL 10373266 (S.D. Fla. Oct. 19, 2021)....7, 8

*Pinsky v. Duncan*,
79 F.3d 306 (2d Cir. 1996)....13

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
842 So. 2d 773 (Fla. 2003)....17

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025)....16

*Prisua Eng'g. Corp. v. Samsung Elecs. Co.*,
472 F. Supp. 3d 1183 (S.D. Fla. 2020)....19

*Prohias v. AstraZeneca Pharms., L.P.*,
958 So. 2d 1054 (Fla. 3d DCA 2007)....18

*Ranger v. Wells Fargo Bank N.A.*,
757 F. App'x 896 (11th Cir. 2018)....14

*Rosado v. Barry Univ. Inc.*,
499 F. Supp. 3d 1152 (S.D. Fla. 2020)....12

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008)....4, 6

*Santiago-Duran v. Vanguard Parking Sols., Inc.*,
764 F. Supp. 3d 1203 (S.D. Fla. 2025)....11

*Siamas v. Zelcs*,
2025 WL 2494253 (M.D. Fla. Aug. 29, 2025)....19

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*,
650 F. Supp. 2d 1213 (S.D. Fla. 2009)....10

*Solo v. United Parcel Servs.*,
819 F.3d 788 (6th Cir. 2016)....4

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
739 F.3d 579 (11th Cir. 2013)....13

**Page**

*State Farm Mut. Auto. Ins. Co. v. LaRocca*,
685 F. Supp. 3d 1354 (M.D. Fla. 2023)....................11

*State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*,
9 F. Supp. 3d 1303 (M.D. Fla. 2014)....................13

*Ted's of Fayville, Inc. v. Koffi*,
452 F. Supp. 3d 1 (D. Mass. 2020)....................8

*Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
504 F. Supp. 2d 1307 (S.D. Fla. 2007)....................18

*Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*,
2023 WL 1469408 (M.D. Fla. Feb. 2, 2023)....................19

*Williams v. Bear Stearns & Co.*,
725 So.2d 397 (Fla. 5th DCA 1998)....................10

*Zlotnick v. Premier Sales Grp.*,
480 F.3d 1281 (11th Cir. 2007)....................17

**STATUTES, RULES, AND REGULATIONS**

19 U.S.C.
§1401a(b)(3)(B)....................5

29 U.S.C.
§1144(a)....................4

49 U.S.C.
§13102(23)(B)....................5

Fla. Stat.
§501.202(2)....................18
§501.211(1)....................19
§501.212(1)....................18

Federal Rules of Civil Procedure
Rule 9(b)....................16
Rule 12(b)(6)....................3, 10, 11

## I. INTRODUCTION

For over a year, the Trump administration levied tariffs on certain imported goods, under the authority supposedly granted by the International Emergency Economic Powers Act ("IEEPA"). Defendant DHL Express (USA), Inc. ("DHL"), an international shipping company, billed U.S. consumers for those tariffs, collected the tariffs, and paid them to the government—entirely separately from the shipping fees that it charged to and collected from the foreign shipper-exporters. And DHL would not deliver the goods until the consumers paid the tariffs.

The Supreme Court ruled that the IEEPA did not authorize the tariffs, meaning that they were void from the start. In response, DHL has sought a refund of the tariffs from the U.S. government. But it has not obligated itself, when and if it receives them, to then refund those tariffs to the consumers who ultimately paid them. (Indeed, by opposing the present Complaint,[1] DHL claims the opposite.) As a result, G-Force PowerSports Inc., John Plaras, William Harless, Diane Dawkins, and Anchor Pattern Machine LLC ("Plaintiffs"), on behalf of themselves and similar consumers, sued DHL for the refunds, interest, and tariff-related charges DHL also levied.

DHL now moves to dismiss. First, it argues that Plaintiffs' claims are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). But that statute on its face does not preempt the claims here because those claims are not about DHL's role in setting shipping prices or routes; rather, the claims implicate DHL's role in collecting unlawful tariffs and related fees and its failure to refund those tariffs—long after it delivered the goods—or its own fees ***ever***. Abundant case law, including that cited by DHL, makes that clear.

Second, DHL argues that Plaintiffs' claims must be dismissed as a matter of law. They are wrong. DHL seeks dismissal of Plaintiffs' unjust enrichment and money had-and-received claims by asserting that it was in contractual privity with Plaintiffs and the voluntary payment defense. Neither of these challenges are a proper basis for dismissal. DHL's challenge to Plaintiffs' conversion claim fares no better because the alleged contract does not cover the tariff refunds at issue here and is extraneous to the Complaint. DHL's challenge to Plaintiffs' Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim also fails, because no law required DHL to retain the IEEPA tariff refunds and interest, much less impose and retain the tariff-related fees from which DHL profited. Finally, courts have recognized stand-alone claims for declaratory

[1] All "¶__"cites are to Plaintiffs' Consolidated Class Action Complaint, ECF 16 ("Complaint").

relief, and regardless, Plaintiffs are entitled to declaratory relief as a FDUTPA remedy.

Third, DHL argues that the case should be stayed pending resolution of its refund claim against the government. That argument fails because there is no conflict between the two cases; in fact, it's the opposite. DHL's request that the Court simply take its word that it will refund its customers (albeit only the tariffs) ignores that court supervision of that process—like that which exists in any class action—is necessary to protect the rights of DHL's customers.

## II. BACKGROUND

Beginning in February 2025, President Trump signed executive orders to invoke the IEEPA to impose new tariffs on goods imported into the United States. ¶23. Just one year later, in February 20, 2026, the Supreme Court held, in *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026), that the President does not possess—and never possessed—the authority to impose tariffs under the IEEPA. ¶2. As such, all tariffs imposed under the IEEPA were illegal from the outset. *Id*. Shipping companies like DHL played a critical role in the practical application of these tariffs by acting as importers of record, charging consumers for the tariffs, and passing that money through to the United States Customs and Border Protection ("CBP"). ¶4. DHL also charged extra fees on top of the tariffs, in excess of DHL's actual costs. ¶¶101, 124.

Plaintiffs are consumers who purchased goods shipped to them from foreign countries by DHL. In each case, Plaintiffs purchased products from overseas and paid for their shipping costs at the point of purchase. ¶¶66-77. The merchants from whom Plaintiffs purchased their goods would then contract with DHL to ship the goods to Plaintiffs, with Plaintiffs having no contact with DHL during this process. ¶4. Later, Plaintiffs received an invoice from DHL charging them for the illegal IEEPA tariffs and related fees and notifying them that DHL had their goods and would not deliver them until the charges were paid. *Id*. If they wanted to receive their goods, Plaintiffs had no choice but to pay DHL the amount of the tariffs and the fees it charged. *Id*.

After the Supreme Court struck down the IEEPA tariffs, DHL filed suit in the United States Court of International Trade ("CIT") seeking "the prompt refund, with interest, of any IEEPA duties paid by [DHL]." *See* Complaint, *DHL Express (USA), Inc. v. U.S. Dep't of the Treasury*, No. 1:26-cv-01824 (Ct. Int'l Trade Mar. 13, 2026), ECF 2, ¶9.[2] As DHL noted in its Motion to Dismiss or Stay here ("Motion" or "Mot."), CBP has implemented an administrative process for

[2] Unless otherwise noted, all emphasis is added and citations are omitted.

importers to seek tariff refunds via the Consolidated Administration and Processing of Entries system. The Trump administration claims that around $100 billion out of $166 billion in IEEPA tariffs collected has been refunded through this system as of August 2026.[3] However, uncertainty remains as to the scope and timing of refunds, including whether DHL will refund all illegally collected IEEPA tariffs irrespective of the CIT action's outcome and what it will do with any interest earned on the refunds in the interim. What is clear, however, is that DHL does not intend to return the tariff-related fees it collected and retained for its own profit.

Following consolidation, Plaintiffs filed their Complaint, alleging claims for unjust enrichment, money had and received, conversion, FDUTPA violations, and declaratory relief. While the CIT action is set to adjudicate the amount of any refunds and interest due to DHL, it will not resolve the distinct issues Plaintiffs bring here—namely, Plaintiffs' own entitlement to a full refund of the illegal tariffs, tariff-related fees DHL collected from them, interest on those amounts, disgorgement of profits, and all other available relief arising from DHL's conduct.

## III. LEGAL STANDARD

Under Rule 12(b)(6), "a plaintiff needs to allege facts that are 'plausible on [their] face,' and 'raise a right to relief above the speculative level[,]'" *Dorman v. Aronofsky*, 36 F.4th 1306, 1312 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)), and well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff, *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). Plaintiffs' pleading plainly meets this standard. Moreover, a court may dismiss a complaint only when "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). That is simply not the case here.

## IV. ARGUMENT

### A. The FAAAA Does Not Preempt Plaintiffs' Claims

As an initial matter, when there is an express preemption provision in a statute, the court begins with two "presumptions": (1) that the historic police powers of the states were not to be superseded by the statute unless that was the "clear and manifest purpose" of Congress; and (2)

---

[3] Kevin Breuninger, *Trump admin refunds $100 billion in 'liberation day' tariffs*, CNBC (Aug. 5, 2026), https://www.cnbc.com/2026/08/05/trump-tariffs-refunds-ieepa-lawsuit.html.

any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Furthermore, the Supreme Court has held that the FAAAA's preemption clause does not preempt state laws affecting carrier prices, routes, and services in only a "tenuous, remote, or peripheral manner." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992)). The FAAAA uses the phrase "related to," which "embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quoting *Rowe*, 552 U.S. at 370). While "related to" preemption is broad, that "does not mean the sky is the limit." *Id.* As the Supreme Court recognized when analyzing another statute, the phrase "related to" cannot be "taken to extend to the furthest stretch of its indeterminacy" because "for all practical purposes pre-emption would never run its course." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (addressing scope of preemption in ERISA statute, 29 U.S.C. §1144(a)).

Moreover, in interpreting the preemption language in the FAAAA, the Supreme Court has relied on the fact that Congress used largely identical preemption language in the Airline Deregulation Act ("ADA"), noting that Congress must have intended the FAAAA to be interpreted in largely the same way as the ADA. *Rowe*, 552 U.S. at 370. And about the ADA, the Supreme Court has made it clear that claims based in state common law are often not preempted. *See, e.g.*, *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) ("We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations [about airline travel], but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."); *see also Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 285 (2014) (holding similarly regarding claims for covenant of good faith and fair dealing). Notably, the Sixth Circuit has read these cases to hold that unjust enrichment claims in particular are not always preempted under the FAAAA. *Solo v. United Parcel Servs.*, 819 F.3d 788, 798 (6th Cir. 2016) (remanding for further consideration of whether FAAAA preempted unjust enrichment claims).

Critically, as the Supreme Court recognized in *Pelkey*, although the FAAAA's preemption provision is similar to the ADA's preemption provision, the FAAAA's provision "contains one conspicuous alteration—the addition of the words 'with respect to the transportation of property.'"

*Pelkey*, 569 U.S. at 261. The addition of this phrase, the Court noted, "massively limits the scope of preemption ordered by the FAAAA." *Id.* (cleaned up). Thus, "for purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's transportation of property." *Id.* (cleaned up); *see also Hentz v. Kimball Transp., Inc.*, 2018 WL 5961732, at *3 (M.D. Fla. Nov. 14, 2018) (quoting *Pelkey*, holding that "the FAAAA's preemption provision contains one phrase the ADA's preemption provision does not—a phrase of paramount importance," and remanding case to state court because the FAAAA did not preempt negligence claim stemming from trucking accident). *Pelkey* also noted that "Title 49 defines 'transportation,' in relevant part, as 'services related to th[e] movement' of property, 'including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.'" 569 U.S. at 261 (quoting 49 U.S.C. §13102(23)(B)).

DHL ignores each of these principles limiting the preemptive reach of the FAAA, instead baldly asserting that claims brought under state consumer protection statutes and claims of unjust enrichment are preempted when brought against motor carriers (full stop). However, DHL does not attempt to wrangle with the factual and legal distinctions between this case and those it cites.

DHL asserts that Plaintiffs' claims are preempted because they "arise from DHL's pricing and services." Mot. at 5. That is untrue. The tariffs were not part of the "price" that was paid for DHL's services. Indeed, courts frequently conclude that taxes and tariffs are not part of the "price" of a good or service. *See, e.g.*, *Century Importers, Inc. v. United States*, 205 F.3d 1308, 1311-13 (Fed. Cir. 2000) (noting the distinction between the "price" paid by importer and the duties/tariffs that are calculated on and added to that price, noting that importer and exporter treated them separately and importer billed exporter for them separately after paying them and seeking reimbursement from exporter, and noting that "price" for customs calculations purposes does not include duties/tariffs if the latter are separately identified on the invoice(s)); 19 U.S.C. §1401a(b)(3)(B) (providing that the "price actually paid or payable" for imported merchandise, on which duties/tariffs are calculated, does not include duties/tariffs paid by importer if those duties/tariffs are separately identified on the invoice(s) from exporter); *Donoghue v. Wallach*, 455 So. 2d 1085, 1086-87 (Fla. 2d DCA 1984) (treating sales tax as distinguishable and separate from price, and that tax is something added to the price).

Here, the "price" that DHL charged for shipping its products was separate from the tariffs it charged and collected from Plaintiffs. Indeed, Plaintiffs allege that DHL sent invoices to Plaintiffs for the tariffs that were only for the tariffs and DHL's tariff-related fees, and that the "price" DHL charged for the shipping—which was charged and paid by the merchants, not Plaintiffs—was on a separate invoice between DHL and the merchants. ¶¶41, 70-79. Not only that, but DHL charged Plaintiffs for the tariffs well after they had placed their orders and paid for their shipping via their payments to the merchants. ¶¶70, 73, 76, 79. Furthermore, DHL had no discretion over the amount charged for the tariffs—the amount was simple math based on the price of the imported item—whereas a company charging a "price" does have such discretion.

Given all of these facts, preemption does not exist. The FAAAA's preemption of claims "related to a price . . . with the respect to the transportation of property" is clearly based on the idea that any challenges to how a shipper sets or collects its prices is preempted. This case, however, has nothing to do with how DHL sets or collects its prices.

This case also has nothing to do with anything "related to a . . . route [or] service . . . with respect to the transportation of property." Indeed, Plaintiffs do not allege DHL did anything wrong in setting routes or performing services—that is, in its shipping of the products at issue. The cases finding preemption highlight that. *See, e.g.*, *Rowe*, 552 U.S. at 370-74 (preempting claims under Maine law requiring tobacco shipper to use delivery service that could verify recipient's age because that statute regulated the act of shipping); *Morales*, 504 U.S. at 386 (preempting claims that airline fare/price advertising was deceptive under state law because they regulated airline pricing and operations). Moreover, Plaintiffs allege in part that unjust enrichment and fundamental unfairness occurred at the point where DHL is claiming and retaining refunds from the federal government that ought, by all rights, go to those who paid them: the consumers. DHL's receipt of these refunds has nothing to do with the prices DHL charges for the shipment of goods, or DHL's routes and services, and it certainly has nothing to do with DHL's "transportation of property" except in a remote or tenuous sense. *See Hentz*, 2018 WL 5961732 at *3.

Indeed, because DHL was acting as a customs broker, not a transportation broker, its conduct is not covered by the FAAAA. The court in *Jana Brands, Inc. v. C.H. Robinson, Int'l, Inc.*, 2018 WL 6697680, at *2 (D. Mass. Dec. 20, 2018), noted that exact distinction. In that case, a food wholesaler sued its customs broker—the company that acted as importer of record and paid

the tariffs for the tuna it was importing on behalf of the wholesaler—for failing to file paperwork that would have enabled the wholesaler to receive a refund of the tariffs it paid, alleging breach of contract, negligence, and related claims. The court held that the FAAAA did ***not*** preempt those claims because the defendant was acting as a customs broker—whose duties included paying tariffs and ensuring refunds of tariffs paid—and not as a "broker" with respect to the "transportation of property," which the FAAAA covers. *Id.* So, too, here. DHL was acting as Plaintiffs' customs broker, ¶21, not as a transportation broker. Plaintiffs' claims here focus only on DHL's role as a customs broker, which *Jana Brands* held did not support preemption.

The two cases on which DHL primarily relies, *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66 (D.N.J. 2022), and *Phillips v. Keystone Moving Grp., LLC*, 2021 WL 10373266 (S.D. Fla. Oct. 19, 2021), are inapt. *Martin* is a non-controlling case from another circuit that cannot easily be squared with *Jana Brands*—which held that the exact customs broker activity at issue here does not yield preemption. In *Martin*, the plaintiffs alleged that DHL added a uniform $17 service charge to the bills that it sent to customers when it billed them for a lawful duty that it had paid to the government—without noting that the amount DHL demanded for the duty included that undisclosed $17 surcharge. 580 F. Supp. 3d at 69-70. The plaintiffs alleged that DHL's doing so was a breach of contract because the contract allowed DHL only to charge for the duty actually paid and because DHL misrepresented to the plaintiffs what was actually owed in duties. *Id.* The court held that because the plaintiffs were challenging DHL's right to charge the $17 fee and its misrepresentations about that fee as part of its price or service, the claims "related to a price, route, or service" of DHL. *Id.* at 73. Here, by contrast, Plaintiffs assert claims grounded in DHL's continued retention of tariff refunds and related fees—conduct that is occurring long after DHL shipped the goods at issue. Many of the other cases DHL cites are inapt for the same reason—because they are only about the right to charge certain fees as part of the shipper's pricing for legitimate services. Mot. at 6-7 (citing six cases).

DHL cites *Phillips* for the proposition that "this Court held that a FDUTPA claim against a moving company sat 'squarely within the realm of the FAAAA preemption provision' because it arose from 'the price, the packing, the receipt, the delivery, and the storage of Phillips' property.'" Mot. at 5. In *Phillips*, the plaintiffs hired the defendant moving company to move their belongings, but the company drove off without completing the move, put the plaintiffs' goods



4936-6519-1629.v1

in storage, and then demanded $2,000 for the release of the goods. 2021 WL 10373266 at *1. The plaintiffs sued under the FDUTPA and for related claims. *Id.* Applying *Pelkey* and the definition of "transportation" in Title 49, this Court held that the claims were preempted by the FAAAA—because they involved only the manner in which the plaintiffs' property was moved and stored. *Id*. at *5. Here, Plaintiffs' claims have nothing to do with ***how*** DHL shipped the products—nothing related to "services related to the movement of property." *Pelkey*, 569 U.S. at 261 (quoting Title 49) (cleaned up). *Phillips* only highlights how the facts presented here are so different from those in cases where the court found preemption.

Even where the claims ***do*** tangentially involve the actual movement of property to some extent, there still is no preemption if the claims are not based on that movement—including if they are based on things happening ***after*** that movement. For example, in *Pelkey*, the Supreme Court noted that one service the defendant provided—removal of the plaintiff's car from his landlord's parking lot by a tow truck—did involve the "movement of property." However, because that movement occurred before the conduct of which the plaintiff was complaining—the defendant's auctioning the car after failing to notify the plaintiff of its intent to do so and failing to pay the plaintiff any compensation after the auction—the FAAAA did ***not*** preempt the claims. 569 U.S. at 252 ("Pelkey seeks redress only for conduct occurring after the car ceased moving"). Here, Plaintiffs' claims are entirely unrelated to any "movement of property" by DHL, ***and*** some of the conduct about which they complain—DHL's wrongful retention of refunded tariffs and fees—is occurring long after DHL's shipment of the goods. This case is even easier than *Pelkey*; if there was no FAAAA preemption there, there can be no FAAAA preemption here.

In that same way, one of the cases DHL cites is somewhat on point, just not in the way DHL thinks it is. In *Fahrenbach v. Green Planet Movers*, 682 F. Supp. 3d 109 (D. Mass. 2023), the court denied the motion to dismiss certain claims under a similar preemption provision because those claims were based on conduct that "occurred after the transportation of property had terminated[.]" *Id*. at 112-13; *see also Ted's of Fayville, Inc. v. Koffi*, 452 F. Supp. 3d 1, 4 (D. Mass. 2020) (claims based on conduct that occurred separately from and after the transportation of property were not preempted by the FAAAA). Again, Plaintiffs' claims arise in part from conduct that took place both separately from and after the transportation of their property had ceased—namely, the collection and retention of tariff refunds and fees that belong to them. The

remaining cases DHL cites to support the proposition that state unfair trade practices claims are preempted by the FAAAA are similarly inapt because those claims very clearly arose from conduct about the transportation of property and that took place ***during*** that transportation of property. *See Louis M. Marson Jr., Inc. v. All. Shippers, Inc.*, 438 F. Supp. 3d 326, 336 (E.D. Pa. 2020) (preempting a deceptive trade practices claim that arose from a failure to timely deliver the plaintiff's goods); *CRST Dedicated Servs., Inc. v. Ingersoll-Rand Co.*, 194 F. Supp. 3d 426, 431-33 (W.D.N.C. 2016) (preempting a deceptive trade practices claim because it was based on the plaintiff's "unilateral decision to halt its ongoing transportation services to renegotiate the price that [defendant] would pay").

DHL summarily cites two other cases in an attempt to establish preemption, but both cases are easily distinguishable. Neither *Bailey v. Rocky Mtn. Holdings, LLC*, 889 F.3d 1259 (11th Cir. 2018), nor *Cerdant, Inc. v. DHL Express (USA), Inc.*, 2009 WL 723149, at *4 (S.D. Ohio Mar. 16, 2009), has anything to do with customs brokers or tariffs. Additionally, the claim in *Bailey* that crashed "headlong into the shoals of preemption" was preempted under the considerably broader ADA, not the FAAAA. Most importantly, both cases involved claims arising from the defendants' conduct as transporters of persons or property, whereas Plaintiffs' claims relate to DHL's conduct purely as a customs broker that failed to refund tariffs and related fees.

Finally, DHL cites *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir. 2003), claiming that "[b]y using the phrase 'related to,' the FAAAA takes on 'an extremely broad scope.'" Mot. at 4 (quoting *Branche*). First, *Branche* involved the ADA and not the much narrower FAAAA. Second, Branche ***reversed*** summary judgment for the defendant on preemption grounds, holding that despite the ostensibly broad nature of the "relate to" language, the ADA's "related to the . . . services of an air carrier" language applied only to the elements of air travel "that are bargained for by passengers with air carriers[,]" and not, for example, to claims by employees for retaliation, despite the real connection between that and air travel. 342 F.3d at 1258. *Branche*, thus, highlights how the "relate to" language is not nearly as broad as DHL suggests and often yields no preemption.

### B. Plaintiffs Adequately Plead Each of Their Claims

#### 1. Plaintiffs State Valid Claims for Unjust Enrichment and Money Had and Received

Plaintiffs' equity claims rest on a straightforward principle: DHL should not be permitted

to retain and benefit from money obtained from Plaintiffs because of tariffs that were void from the outset, much less retain additional fees it charged for collecting those unlawful tariffs.[4] It is telling that DHL's attempts to defeat the unjust enrichment and money had-and-received claims rest on new "evidence" that raises factual questions outside the four corners of the Complaint, or on affirmative defenses that are inappropriate for resolution now. For these reasons alone, DHL's Motion to dismiss these claims must fail.

**a. Plaintiffs Nowhere Allege Contractual Privity**

As an initial matter, DHL argues that Plaintiffs cannot assert an unjust enrichment claim based on tariffs and fees collected in relation to their DHL shipments because a contract purportedly governs "the same subject matter." Mot. at 8. DHL asks the Court to assume, at the pleading stage, the existence of a contract—a fact that directly contradicts Plaintiffs' contrary allegation. ¶97. Without requesting judicial notice, DHL points the Court to Terms and Conditions that it asserts applies to all Plaintiffs and forms a binding contract with each. The Court should not sanction an obvious deviation from the Rule 12(b)(6) standard of review and Plaintiffs' well-pleaded claims. *Mendoza v. Disc. C.V. Joint Rack & Pinion Rebuilding, Inc.*, 2014 WL 979065, at *1 (S.D. Fla. Mar. 13, 2014) ("In determining a motion to dismiss, the court must only look to the four corners of the Complaint and any attached exhibits.")

Regardless, the most that DHL can establish is that there may be a question of fact as to the existence, scope, and enforceability of a contract between the parties—an issue inappropriate for resolution now. "'Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature.'" *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) (quoting *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998)).[5] This is particularly true because an unjust enrichment claim "is barred ***only if*** an express contract concerns ***the same subject matter***." *F.H.*

---

[4] Upon information and belief, DHL refunded some tariffs with CBP-calculated interest to G-Force PowerSports Inc., but it has not refunded tariff-related fees.

[5] DHL's authority further supports Plaintiffs' point. In *Al Rushaid Petrol. Inv. Co. v. Siemens Energy Inc.*, plaintiff's own allegations that the unjust enrichment claim was based on "contractual obligations" were fatal to their claims, as they were based entirely on matters covered by alleged express contracts. 159 F.4th 887, 901 (11th Cir. 2025). Plaintiffs here make no such allegation and, in fact, dispute the existence of a direct contract.

*Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 49 (Fla. 4th DCA 2021). And nothing in DHL's terms concern the retention of illegal tariffs and related fees.

**b. The Voluntary Payment Doctrine Is an Affirmative Defense that Cannot Justify Dismissal at This Stage**

DHL's reliance on the voluntary payment doctrine is also misplaced. The payments Plaintiffs made to DHL were due to the absence of a reasonable alternative. In order to receive their goods, DHL forced Plaintiffs to pay it the amount of the tariffs and the tariff-related fees. ¶4. *See Broward Cnty. v. Mattel*, 397 So. 2d 457, 459-60 (Fla. 4th DCA 1981) ("payment of an illegal tax, even without protest, in order to avoid forfeiture of the right to do business is not a voluntary payment"). Also, the voluntary payment doctrine is an affirmative defense whose application turns on facts beyond the face of the pleadings. As the court explained in *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, the voluntary payment doctrine "entails a fact-based inquiry not suited for resolution on a Rule 12(b)(6) motion." 198 F. Supp. 3d 1332, 1342 (S.D. Fla. 2016); *see Santiago-Duran v. Vanguard Parking Sols., Inc.*, 764 F. Supp. 3d 1203, 1212 (S.D. Fla. 2025) (finding that whether plaintiff paid her parking debt with full knowledge of the material facts was a question of fact that could not be resolved on 12(b)(6)). DHL thus again asks the Court to resolve, on a motion directed to the sufficiency of the pleadings, a fact-dependent affirmative defense that cannot be proven on the face of the Complaint. That is precisely the inquiry *Deere Construction* and *Santiago-Duran* recognize as inappropriate at this stage.[6]

**c. Plaintiffs Plead DHL Retained Inequitable Benefits Without Providing Value**

"To establish unjust enrichment in Florida, a plaintiff must prove that '(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.'" *Innovative Vehicle Sols. W., LLC v. Renntech, Inc.*, 2022 WL 3137029, at *6 (S.D. Fla. June 16, 2022) (cleaned up). DHL wrongly asserts that Plaintiffs fail on elements two and three.

Plaintiffs plead that DHL voluntarily retained the benefit Plaintiffs conferred upon it.

[6] DHL cites to *Easter v. City of Orlando*, 249 So. 3d 723 (Fla. 5th DCA 2018), in support of its argument that the voluntary payment doctrine applies, but there the defendant asserted the doctrine at the motion for class certification stage. Similarly, *State Farm Mut. Auto. Ins. Co. v. LaRocca*, 685 F. Supp. 3d 1354 (M.D. Fla. 2023), addresses it on a motion for summary judgment.

Plaintiffs paid the IEEPA tariffs to DHL, ¶¶39-40, and DHL currently has no legally enforceable obligation to return the IEEPA tariffs once it obtains refunds from CBP, ¶60. Thus, absent such an obligation, even if the initial pass-through of tariffs does not constitute retention, DHL is positioned to retain refunds of the IEEPA tariffs that never should have been collected in the first place—including interest it earns in the holding. Plaintiffs' allegations concerning the tariff-related fees are even more direct. DHL cherry-picks one paragraph from the Complaint to suggest that Plaintiffs allege DHL passed through all tariff-related fees to CBP. *See* Mot. at 10. Not so. Repeatedly through the Complaint, Plaintiffs allege that DHL collected and retained tariff-related clearance and processing fees ***as profit*** to itself. *See, e.g.*, ¶¶21, 40-41, 54, 63. Worse, DHL has expressly stated that it will retain the processing fees it collected from consumers and businesses that would not have been charged but for the imposition of the unlawful IEEPA tariffs—even though it knows the tariffs (and related fees) were illegal from the start. ¶61. Although the IEEPA tariffs allegedly supplied the occasion for those charges, DHL seeks to retain the financial benefit flowing from them even after the IEEPA tariffs themselves have been declared void *ab initio*. Plaintiffs have therefore adequately alleged DHL's voluntary acceptance and retention of the benefits at issue, namely the IEEPA tariffs and tariff-related fees. ¶¶100-102.

Plaintiffs also plead that it is inequitable for DHL to retain, and not refund to Plaintiffs, the IEEPA tariffs, interest, and related fees it collected. The IEEPA tariffs were unlawful, invalid, and void from the outset. ¶¶51-53. It then follows that the clearance fees charged to Plaintiffs were unlawful, invalid, and void from the outset. DHL was unjustly enriched by the fees DHL charged Plaintiffs, tied to the unlawful tariffs, and by all interest it has earned from the retention of Plaintiffs' money. ¶54. Plaintiffs have alleged precisely the type of circumstances in which retention of a benefit without repayment would be inequitable. *See, e.g.*, *Rosado v. Barry Univ. Inc.*, 499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020) (unjust enrichment claim upheld where plaintiff alleged that university retained her tuition and fees even though it did not provide the services for which payment was made). Moreover, while DHL disputes that the retention of the tariffs and tariff-related fees is unjust, "a motion to dismiss tests the sufficiency of the pleading, not the merits of the case." *Id*. DHL collected and has not refunded the unlawful and tariff-related sums from Plaintiffs, instead retaining the resulting financial benefit to and for itself.

DHL's authority does not save it. DHL cites to *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996), to argue that it was reasonable—and not inequitable—to rely on executive orders when it collected and remitted the tariffs (an affirmative defense).. *See* Mot. at 11. But *Pinsky* addresses a statute—not executive orders whose constitutionality was questioned and subject to legal challenges ***from inception***. Moreover, the *Pinksy* court notes: "The case would be different, however, if those who act in reliance on a statute can be 'shown to know that such [statute] was unconstitutional and would be declared so.'" 79 F.3d at 313 (cleaned up). This is precisely what Plaintiffs allege! ¶102. Similarly, the court in *Danielson v. Inslee*, 945 F.3d 1096 (9th Cir. 2019), found the defendant had a good faith affirmative defense for collecting fees pursuant to state law and Supreme Court jurisprudence that had stood for ***four decades***. *Id.* at 1009. Here, it took a single year for legal challenges to the tariffs to work their way through our legal system to the Supreme Court, which promptly and unambiguously struck them down.

Last, DHL did not provide true value in exchange for the tariff-related fees it collected. While DHL argues that its retention of the fees is not inequitable because it gave value in exchange, it relies on cases where defendants charged processing fees for ***legal*** transactions. Mot. at 11-12. Plaintiffs shouldered the economic burden of the IEEPA tariffs, and DHL's processing of illegal tariffs did not benefit Plaintiffs any more than a consumer benefits from paying an improperly collected surcharge added to a utility bill. ¶¶38, 42. Allowing DHL to retain profit from the collection and processing of these illegal duties would enable DHL to benefit from a windfall for which it gave no real value in exchange. Indeed, Plaintiffs allege that these fees flowed directly from the illegal IEEPA tariffs and should not have been charged in the first place. ¶¶54-55. And Florida law clearly supports a cause of action for unjust enrichment upon a defendant's acceptance and retention of a benefit "that it is not legally entitled to receive in the first place." *State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1312 (M.D. Fla. 2014) (citing *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab,* 739 F.3d 579, 584 (11th Cir. 2013)). That is exactly what is alleged here: DHL is not legally entitled to keep the IEEPA refunds nor the tariff-related fees that resulted therefrom.

**2. Plaintiffs Adequately Plead Their Conversion Claim**

DHL correctly states the elements of conversion, but it wrongly asserts that Plaintiffs fail to state a claim. Mot. at 12. Plaintiffs plead that DHL exercised dominion over Plaintiffs' money

by collecting, retaining, and refusing to refund illegal tariffs, together with fees imposed solely because of those unlawful tariffs, ¶111, and that DHL's retention and control of those funds is inconsistent with Plaintiffs' ownership rights, ¶112. This taking was unlawful and void at the outset and is not sanctioned by contract. Plaintiffs thus plead a classic conversion claim. *See Joe Hand Promotions, Inc. v. Sorota*, 2012 WL 2414035, at *2 (S.D. Fla. June 26, 2012).

***First***, Plaintiffs adequately plead that DHL wrongfully asserted dominion over payments for illegal IEEPA tariffs and fees, and Plaintiffs allege that exercise of dominion is inconsistent with Plaintiffs' ownership rights. ¶52. DHL points to *Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896 (11th Cir. 2018), for the proposition that Plaintiffs must first demand—and be refused—the return of their property before a wrongful dominion occurs. But that case addresses facts where the "original taking is lawful[.]" *Id.* at 905; Mot. at 14. Because the underlying tariffs were never lawfully imposed, DHL's exercise of control over Plaintiffs' money was conversion the moment it received the funds. *See Mullenmaster v. Newbern,* 679 So.2d 1186, 1187 (Fla. 4th DCA 1996) (where the taking underlying a conversion claim is unlawful, no demand is necessary); *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 2009 WL 4890664, at *4 (S.D. Fla. Dec. 17, 2009) (county not required to make a demand for the disputed funds before bringing its conversion claim because it alleged that the defendants' original possession of the funds was unlawful).

Regardless, from the moment the Supreme Court affirmed the tariffs were unlawful, DHL's continued exercise of dominion over the tariff payments, interest, and tariff-related fees is clearly inconsistent with Plaintiffs' ownership rights. DHL reassures the Court that it will refund—at some future date—whatever money it receives from CBP. Mot. at 14. But, as Plaintiffs allege, DHL currently has no legally enforceable obligation to return the IEEPA tariffs, let alone interest. ¶60. Thus, when and if DHL receives from CBP a refund of tariffs originally paid by Plaintiffs, DHL retains control over whether, when,[7] and to whom those funds will be returned. And even if it never receives a dime from CBP, it still must refund Plaintiffs' money. Worse, DHL imposed and collected tariff-related processing fees as revenue to itself, ¶40, but it has taken the position

[7] DHL's earning report for the second quarter of 2026 notes a "temporary positive impact from IEEPA tariffs reimbursement (€416m)," which has helped it "partially offset" its need for cash for working capital. DHL stands to benefit from the interest on the tariffs by holding on to it. DHL Group, Q2 2026 Results (Aug. 5, 2026), https://reporting-hub.group.dhl.com/ecomaXL/files/DHL-Group-Q2-2026-Earnings-Presentation.pdf.

that it will retain those fees even though the tariffs that occasioned their collection were unlawful from the outset, ¶61. In refusing to refund charges for collecting and processing tariffs that lacked a lawful foundation, DHL continues to exercise dominion over Plaintiffs' funds in a manner Plaintiffs sufficiently allege is a wrongful conversion.

***Second***, DHL's argument that Plaintiffs cannot assert conversion as a matter of law because their claims arise from a transaction governed by a contract, Mot. at 12-13, is clearly wrong. DHL relies on *Christie v. Royal Caribbean Cruises*, 497 F. Supp. 3d 1227, 1223 (S.D. Fla. 2020), but there, the plaintiff explicitly brought a breach of contract claim. *Id.* The same is not true here; not only have Plaintiffs not brought a breach of contract claim, ***they allege there was no direct contract*** in effect between the parties. ¶97. To the extent the Court finds there is a colorable dispute over whether the parties were in contractual privity, it is still bound by the four corners of the Complaint. *See Mendoza*, 2014 WL 979065, at *1. Plaintiffs allege no contractual terms that would grant DHL the right to charge and collect illegal fees and related tariffs. *See Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. 4th DCA 2001) ("A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our courts.").

***Third***, DHL's argument that Plaintiffs cannot bring conversion claims based on money because they fail to allege their payments were held separate and were "'specifically identifiable,'" Mot. at 13, also fails. Plaintiffs allege that DHL exercised dominion over property belonging to Plaintiffs, and Plaintiffs identify the actual money they paid DHL in connection with the IEEPA tariffs and the corresponding tariff-related fees. ¶¶68, 71, 74, 77, 80. Those sums were charged to and collected from Plaintiffs for specifically identified purposes arising from the imposition and processing of the IEEPA tariffs. ¶¶67, 70, 73, 76, 79. The Complaint therefore identifies the "specifically identifiable" property over which DHL allegedly exercised wrongful dominion with enough specificity to permit the conversion claim to proceed.

Nevertheless, DHL relies on a narrow reading of two cases: *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970), and *Johnson v. Chase Bankcard Servs., Inc.*, 582 F. Supp. 3d 1230, 1238 (M.D. Fla. 2022), to argue that Plaintiffs' money must have been physically held apart. It argues that Florida only recognizes conversion claims for money in limited circumstances in which, for instance, money is held in a separate escrow account, a sum of money sealed in an addressed envelope was mis-delivered, or money in a deposit was never credited to



4936-6519-1629.v1

the depositor's account. Mot. at 13. However, "[t]he circumstances under which Florida courts recognize conversion claims of money are not quite as limited as Defendant[] suggest[s]." *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009) (rejecting similar argument by defendant). Indeed, conversion of money also exists when a party pays money to another for a specific purpose, as long as the money is "'delivered at one time, by one act and in one mass.'" *Id.* (quoting *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006)). Here, Plaintiffs allege that DHL took their money, which was delivered at one time via individual invoices, by one act, and in one mass when DHL demanded and each Plaintiff paid the illegal IEEPA tariffs and tariff-related fees. This is enough.

Plaintiffs also allege that DHL is still receiving and holding refunds of Plaintiffs' money without a binding obligation to return the IEEPA tariffs for which it is receiving refunds from CBP, ¶60, let alone interest on those tariffs, ¶63, and tariff-related fees, ¶61, although all of that money rightfully belong to Plaintiffs.

### 3. Plaintiffs' FDUTPA Claim is Well-Pleaded

DHL's challenge to Plaintiffs' FDUTPA claim is twofold: (1) that Plaintiffs do not adequately allege a deceptive act or unfair practice; and (2) that the safe harbor bars these claims as a matter of law. Mot. 14-16. It is wrong. Plaintiffs adequately allege both deceptive acts and unfair trade practices—both when it collected illegal tariffs and fees and when it failed to refund those tariffs and fees. And the safe harbor does not shield DHL from collecting illegal tariffs.

First, Plaintiffs allege DHL's deceptive acts with sufficient particularity. Rule 9(b) requires a plaintiff to allege "the who, what, when[,] where, and how" of the fraudulent conduct. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1296 (11th Cir. 2025) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Here, Plaintiffs allege that between February 4, 2025 and February 24, 2026, DHL charged and collected from Plaintiffs and other U.S. consumers IEEPA tariffs, which DHL knew or should have known were illegal because they were unconstitutional, and additional fees occasioned by those illegal IEEPA tariffs, from which DHL profited because the amounts charged exceeded DHL's actual costs of providing the corresponding services. ¶¶51-53, 81. And they provide specific examples, shipments, and invoices via which DHL collected the illegal tariffs and related fees. Plaintiffs thus clearly identify: who engaged in the alleged deception (DHL); what DHL did (charged and collected unlawful tariffs and tariff-

related fees from which it allegedly profited and then failed to promptly refund the tariffs, interests, and fees); when the conduct occurred (between February 4, 2025 and February 24, 2026, on specific dates with specific shipments, and when the Supreme Court declared the IEEPA illegal and the refunds clearly became due); where it occurred (throughout the United States); and how the alleged scheme operated (via invoices and communications demanding payment prior to releasing Plaintiffs' goods).

Moreover, Plaintiffs need not plead any affirmative misrepresentation to state a claim under the FDUTPA's deceptive prong. *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018). As DHL's own authority makes clear, it is enough that DHL's actions were likely to—and did—mislead Plaintiffs into paying for unlawful tariffs and related fees. ¶124(b); *see* Mot. at 15 (citing *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281 (11th Cir. 2007)). Deception occurs "if there is a . . . practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick*, 480 F.3d at 1284. This standard "requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Maor v. Dollar Thrifty*, 303 F. Supp. 3d 1320, 1328 (S.D. Fla. 2017) (cleaned up). Demanding and collecting illegal tariffs and related fees and invoicing them as legal line items creates a misleading impression as to their legitimacy and constitutes a deceptive practice under the FDUTPA, even absent an express false statement. *See Latman v. Costa Cruise Lines*, 758 So. 2d 699, 703-04 (Fla. 3d DCA 2000) (billing passengers for "port charges" was deceptive where bills misleadingly implied they were pass-through charges).

Plaintiffs similarly plead a valid FDUTPA claim based on unfair practices. DHL's retention of money collected for tariffs that were illegal *omni tempore* is, at the very least, "substantially injurious" to consumers and the public at large. *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); ¶129. And DHL's retention of fees it charged as a customs broker and importer of record—a role it only assumed due to the illegal IEEPA tariffs and through which it charged fees in excess of DHL's actual costs for services—is "immoral, unethical, oppressive, [or] unscrupulous[.]" *PNR*, 842 So. 2d at 777. Even after the Supreme Court declared the IEEPA tariffs illegal, DHL has failed to promptly refund to Plaintiffs all tariffs, interest, and fees. ¶¶53-54. DHL's alleged conduct violates the fundamental purpose of the FDUTPA, Fla. Stat. §501.202(2), and well-established public policy protecting consumers from unlawful fees.

*See, e.g.*, *Maor*, 303 F. Supp. 3d at 1329 (plaintiff plausibly alleged deception and unfairness by pleading car rental company charged fees for toll administration while profiting from majority of the fee); *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1288-99 (S.D. Fla. 2020) (plaintiff plausibly alleged deception and unfairness by pleading that defendant charged mandatory "insurance fee" as a discrete line-item charge and created the false impression that the fee was a pass-through to a third-party insurance carrier).

In fact, Plaintiffs allege that not only is it unfair, but it is also ***unconscionable***, for DHL to collect illegal IEEPA tariffs, charge and retain fees as profit from collecting illegal tariffs, make and retain interest off any refunds of those tariffs, and otherwise refuse to refund, promptly, all monies owed. ¶126. DHL ignores Plaintiffs' allegations that its conduct was unconscionable and has waived the ability to challenge them now. *See Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1312 (S.D. Fla. 2007) (defendant waived argument it failed to raise in its motion to dismiss); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) (same).

DHL's argument that FDUTPA's safe harbor applies, Mot. at 14-15, is simply incorrect. While true that the FDUTPA safe harbor does not apply to any "act or practice required or specifically ***permitted*** by federal or state law," Fla. Stat. §501.212(1), DHL conveniently side-steps two truths. First, DHL's collection of IEEPA tariffs was not required by law—IEEPA tariffs were illegal from the outset.[8] In the cases DHL cites, the federal laws immunizing the defendants from the FDUTPA were never found to be illegal or invalid. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1099 (11th Cir. 2021); *Prohias v. AstraZeneca Pharms., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007). That is an important distinction from this case, where the underlying IEEPA tariffs were found to have been found illegal from the outset. Second, and noticeably absent from DHL's argument, no law required DHL to charge Plaintiffs the clearance and other related fees occasioned by IEEPA tariffs and that Plaintiffs allege exceeded DHL's actual costs. Those fees represent money straight into DHL's pocket.

### 4. Plaintiffs Properly Assert Entitlement to Declaratory Judgment

DHL's assertion that Plaintiffs cannot state an independent claim for declaratory judgment, Mot. at 16-17, is belied by the fact that courts often adjudicate stand-alone claims under the

[8] To be sure, DHL had alternatives. For example, it could have invoiced the sellers, instead of consumers, or paid those tariffs as held costs and sought recourse directly against the government.

Declaratory Judgment Act. *See, e.g.*, *Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Miami Beach*, 2023 WL 11822208, at *3 (S.D. Fla. Mar. 7, 2023) ("28 U.S.C. section 2201 is titled 'Creation of remedy[.]' But courts often adjudicate stand-alone claims under the Declaratory Judgment Act[.]") (citing *Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*, 2023 WL 1469408, at *2 (M.D. Fla. Feb. 2, 2023) ("To the extent that Plaintiff seemingly takes issue with Defendant's pleading of a declaratory judgment claim in a stand-alone count, parties routinely plead declaratory judgment claims in distinct counts."); *Newton v. Brighthouse Life Ins. Co.*, 2021 WL 2604654, at *14 (N.D. Ga. Mar. 11, 2021) ("Defendant's request for dismissal of a claim for declaratory judgment on the basis that it is a remedy and not a stand-alone cause of action is inconsistent with federal practice.")).

Regardless, DHL does not dispute that Plaintiffs properly plead declaratory relief as a remedy. *See* Fla. Stat. §501.211(1) (private right of action to seek declaratory relief under the FDUTPA). Should the Court decide that declaratory judgment should not proceed as a stand-alone claim, it should still permit the request for declaratory relief to stand. *See Siamas v. Zelcs*, 2025 WL 2494253, at *3 (M.D. Fla. Aug. 29, 2025) (dismissing claim for declaratory judgment but stating that "[t]his does not mean that Plaintiff cannot request declaratory relief as a remedy").

**C. The Court Should Not Stay the Claims**

DHL correctly lists factors courts weigh in determining the appropriateness of a stay: "(1) the stage of the litigation; (2) undue prejudice to the nonmoving party; and (3) simplification of the issues in question." *Prisua Eng'g. Corp. v. Samsung Elecs. Co.*, 472 F. Supp. 3d 1183, 1185-86 (S.D. Fla. 2020). "Courts also 'consider whether the totality of the circumstances and the interests of justice favor a stay.'" *Id.* at 1186 (cleaned up). Here, each factor weighs against a stay.

The resolution of DHL's CIT action has no bearing on Plaintiffs' claims. The only issue common to both cases is whether DHL will receive refunds for the tariffs that it paid as an importer of record. That question has been answered: DHL has received and will continue to receive enormous sums of money from the federal government in the form of refunded tariffs. The CIT action will not determine whether DHL is unjustly enriching itself by retaining those funds. And the CIT action has nothing to do with delivering refunds to Plaintiffs. There is no risk of those

proceedings mooting Plaintiffs' claims; to the contrary, those proceedings will only affect the unjust enrichment. Hence there is no reason to wait until the resolution of the CIT action.

DHL also highlights its statements that it will return the tariffs to the customers that paid them, along with the interest it receives. But this should not factor into the Court's decision for several reasons. First, DHL's verbal commitment to refund tariffs isn't enforceable and doesn't guarantee that DHL will actually refund them. Plaintiffs are seeking a court judgment that they are entitled to the refunds that DHL is seeking, receiving, and retaining, not just the comfort of an unenforceable promise from a giant for-profit corporation. Second, DHL has not made a similar commitment to refund the fees that consumers paid to DHL in addition to the tariffs. These fees, which would not have been paid to DHL if not for the illegal tariffs, should be returned to Plaintiffs. Third, DHL has provided very little practical detail about how it intends to go about refunding the tariffs to consumers. It has provided no detail about how it intends to identify everyone who paid tariffs to DHL and the manner in which it will refund them. Additionally, DHL will likely encounter numerous logistical difficulties in doing so: credit cards initially used for payment will have expired, people may have moved or passed on, or bank accounts may be closed. Plaintiffs and putative class members should not have to rely on whatever DHL deems a "good enough" effort to deliver funds to them. Fourth, a stay allows DHL to continue to retain and benefit from enormous sums of cash that it is not timely refunding to customers.

Without judicial involvement, there are no safeguards to ensure that all money owed is returned to customers. The average person has no way of meaningfully verifying that the amount they paid is the amount they are refunded, if any, except through DHL's say so. For the same reason that class action settlements and judgments require judicial approval—to ensure that class members are treated fairly—a court is needed to ensure that DHL's customers are treated fairly.

## V. CONCLUSION

DHL's Motion should be denied in its entirety.

DATED: September 1, 2026

ROBBINS GELLER RUDMAN
& DOWD LLP
DOROTHY P. ANTULLIS
Florida Bar No. 890421
STUART A. DAVIDSON
Florida Bar No. 0084824
MARK J. DEARMAN
Florida Bar No. 982407
MICHAL-ANE E. MCINTOSH
Florida Bar No. 0114108

**Dorothy P. Antullis**
DOROTHY P. ANTULLIS

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
dantullis@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com
mmcintosh@rgrdlaw.com

LEE SEGUI PLLC
Jeremy R. Williams*
Patrick M. Wallace*
Matthew E. Lee
421 North Harrington Street, Suite 460
Raleigh, NC 27603
Telephone: 855/496-7500
jwilliams@leesegui.com
pwallace@leesegui.com
mlee@leesegui.com

WITES & ROGERS, ATTORNEYS AT LAW
MARC A. WITES
Florida Bar No. 24783
THOMAS B. ROGERS
Florida Bar No. 54680
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954/933-4400
mwites@wklawyers.com
trogers@witeslaw.com

Attorneys for Plaintiffs and the Class