**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

Lead Case No. 0:26-cv-60956-LEIBOWITZ

In re DHL TARIFF LITIGATION (Consolidated with Case No. 0:26-CV-61015)

---

This Document Relates To:

ALL ACTIONS

_______________________________________ /

# REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY

## TABLE OF CONTENTS

***Page(s)***


INTRODUCTION ....................................................................................................1

ARGUMENT........................................................................................................1

I. Plaintiffs fail to overcome FAAAA preemption. ...............................................1

II. Plaintiffs concede that they paid DHL's invoices voluntarily. ..............................5

III. The governing contract bars Plaintiffs' unjust enrichment and conversion claims. ................6

IV. Plaintiffs fail to plausibly allege their claims. .....................................................7

- A. Plaintiffs fail to plausibly allege unjust enrichment or money had and received. .......... 7
- B. Plaintiffs fail to state a claim for conversion. ................................................ 8
- C. Plaintiffs fail to state a claim under FDUTPA. ............................................... 9
- D. A declaratory judgment is not a valid cause of action. ...................................... 9

V. A stay is warranted in the alternative. .............................................................10

CONCLUSION......................................................................................................10

CERTIFICATE OF SERVICE ...............................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Sullivan*,
8 F.4th 346 (5th Cir. 2021) ....................4

*Al Rushaid Petrol. Inv. Co. v. Siemens Energy Inc.*,
159 F.4th 887 (11th Cir. 2025) ....................6

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) ....................3

*Amerijet Int'l, Inc. v. Miami-Dade Cnty.*,
7 F. Supp. 3d 1231 (S.D. Fla. 2014) ....................2

*Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*,
65 F.4th 1261 (11th Cir. 2023) ....................2

*Broward Cnty. v. Mattel*,
397 So. 2d 457 (Fla. Dist. Ct. App. 1981) ....................5

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007) ....................4

*Burgess v. Religious Tech. Ctr., Inc.*,
600 F. App'x 657 (11th Cir. 2015) ....................9

*Christie v. Royal Carribean Cruises, Ltd.*,
497 F. Supp. 3d 1227 (S.D. Fla. 2020) ....................6

*City of Key West v. Fla. Keys Cmty. Coll.*,
81 So. 2d 494 (Fla. Dist. Ct. App. 2002) ....................5

*Cox v. Total Quality Logistics, Inc.*,
142 F.4th 847 (6th Cir. 2025) ....................2

*Custom Stud, Inc. v. Meadow Lark, Agency*,
566 F. Supp. 3d 950 (D. Minn. 2021) ....................3

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) ....................3

*Data Mfg., Inc. v. UPS, Inc.*,
557 F.3d 849 (8th Cir. 2009) ....................3

*Diamond v. Pennsylvania State Educ. Ass'n*,
972 F.3d 262 (3d Cir. 2020) ....................................................................................8

*Easter v. City of Orlando*,
249 So. 3d 723 (Fla. Dist. Ct. App. 2018)...............................................................5

*Fahrenbach v. Green Planet Movers*,
682 F. Supp. 3d 109 (D. Mass. 2023) .......................................................................4

*Fernandez v. Sch. Bd. of Miami-Dade Cnty.*,
201 F. Supp. 3d 1353 (S.D. Fla. 2016).....................................................................7

*Galstadi v. Sunvest Communities USA, LLC*,
637 F. Supp. 2d 1045 (S.D. Fla. 2009).....................................................................8

*Gower v. Costco Wholesale Corp.*,
No. 26-2-08898-5 SEA (Wash. Sup. Ct. Jul. 17, 2026) ............................................7

*Hassen v. Mediaone of Greater Fla., Inc.*,
751 So. 2d 1289 (Fla. 2000) .....................................................................................5

*Jana Brands, Inc. v. C.H. Robinson, Int'l, Inc.*,
No. 17-12147-LTS, 2018 WL 6697680 (D. Mass. Dec. 20, 2018) ......................4, 5

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.*,
942 F.3d 352 (7th Cir. 2019) ....................................................................................8

*Johnson v. Chase Bankcard Servs., Inc.*,
582 F. Supp. 3d 1230 (M.D. Fla. 2022) ...................................................................9

*Johnson v. City of Atlanta*,
107 F.4th 1292 (11th Cir. 2024) ...............................................................................6

*Lodge v. Kondaur Cap. Corp.*,
750 F.3d 1263 (11th Cir. 2014) ................................................................................6

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*,
992 F.2d 1171 (11th Cir. 1993) ................................................................................1

*Martin v. DHL Express (USA), Inc.*,
580 F. Supp. 3d 66 (D.N.J. 2022) ........................................................................2, 4

*Maxcess, Inc. v. Lucent Techs.*,
433 F.3d 1337 (11th Cir. 2005) ................................................................................6

*Miller v. C.H. Robinson Worldwide, Inc.*,
976 F.3d 1016 (9th Cir. 2020) ..................................................................................2

*Montgomery v. Caribe Transp. II, LLC*,
608 U.S. 219 (2026) ....................2

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ....................2, 3

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014) ....................3

*Pinsky v. Duncan*,
79 F.3d 306 (2d Cir. 1996) ....................7

*Prisua Eng'g. Corp. v. Samsung Elecs. Co., Ltd.*,
472 F. Supp. 3d 1183 (S.D. Fla. 2020)....................10

*Rowe v. New Hampshire Motor Transp. Ass'n*,
552 U.S. 364 (2008) ....................2, 3

*S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*,
697 F.3d 544 (7th Cir. 2012) ....................3

*Sanchez v. Aerovias De Mexico, S.A. de C.V.*,
590 F.3d 1027 (9th Cir. 2010) ....................4

*Sanchez v. Time Warner, Inc.*,
No. 98-211-CIV-T-26A, 1998 WL 834345 (M.D. Fla. 1998) ....................6

*Solo v. UPS*,
819 F.3d 788 (6th Cir. 2016) ....................3

*State Farm Mut. Auto. Ins. Co. v. LaRocca*,
685 F. Supp. 3d 1354 (M.D. Fla. 2023) ....................5

*Ted's of Fayville, Inc. v. Koffi*,
452 F. Supp. 3d 1 (D. Mass. 2020) ....................4

*Transcapital Bank v. Shadowbrook at Vero, LLC*,
226 So. 3d 856 (Fla. Dist. Ct. App. 2017)....................8

*Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*,
609 F. App'x 972 (11th Cir. 2015) ....................6

*Wholean v. CSEA SEIU Local 2001*,
955 F.3d 332 (2d Cir. 2020) ....................8

**Statutes**

Fla. Stat. § 501.212 ....................9

## INTRODUCTION

Plaintiffs' case is a transparent attempt to find fault with DHL where none exists. As Plaintiffs alleged, DHL had "absolutely no discretion" to determine when the IEEPA tariffs applied and the amount charged. (Consolidated Class Action Compl. ("Compl.") ¶ 22, ECF No. 16.) Since the IEEPA tariffs were invalidated, DHL has filed suit in the U.S. Court of International Trade (CIT) and actively engaged with the Customs and Border Protection (CBP) process to seek refunds of tariff payments. DHL has publicly promised to refund its customers if and when it receives those refunds. DHL has already begun passing along those refunds to its customers, including, as Plaintiffs admit, to Plaintiff G-Force Sports. (*See* Opp. 10 n.4, ECF No. 23.)

Despite this, Plaintiffs brought this action against DHL. Try as they may to bend the law in their favor, their claims are preempted by federal law, prohibited by their voluntary payments to DHL and the contracts governing the transaction, and inadequately pled. This Court should dismiss this case with prejudice and allow the administrative refund process to run its course. Failing that, this Court should stay the proceedings, as DHL's CIT case and the CBP process will narrow or moot any surviving claims.

## ARGUMENT

Plaintiffs' arguments distort the law, misrepresent the facts, and elide the allegations made in their Consolidated Complaint. They are not even asking the Court to apply the correct standard, asserting that "a court may dismiss a complaint only when 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" (Opp. 3 (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).) That pre-*Twombly* standard has not been the law for 18 years. Viewed under the proper plausible pleading test, their allegations fall fatally short.

### I. Plaintiffs fail to overcome FAAAA preemption.

Plaintiffs brought this case seeking refunds of tariffs for goods DHL imported on Plaintiffs' behalf, and fees DHL imposed for customs clearance and entry services in handling those imports. Those claims relate to DHL's "price[s]" and "service[s]" regarding "the transportation of property"

and are preempted by the Federal Aviation Administration Authorization Act (FAAAA). 49 U.S.C. § 14501(c)(1). (Mot. 4–7, ECF No. 19.) Plaintiffs cannot show otherwise.

***First*****,** Plaintiffs argue that the FAAAA does not preempt their claims because they have only a "tenuous, remote, or peripheral" relationship to a motor carrier's prices, routes, or services and do not concern "the transportation of property." (Opp. 4–5 (citation omitted).) Plaintiffs cite *Rowe* and *Morales*, but those cases discussed Plaintiffs' limiting principles only in dicta and found the challenged laws preempted. *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 367, 375–77 (2008) (preempting law regulating shipment and delivery of tobacco products); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 391 (1992) (preempting enforcement of consumer protection law against airline advertisements). Regardless, Plaintiffs filed this action to force DHL to refund tariffs and fees it charged when importing goods and handling related customs entries. The very *subject* of those claims is DHL's pricing, services, and transportation of property. Nothing about that relationship is tenuous, remote, or peripheral. *See, e.g.*, *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 70, 72–73 (D.N.J. 2022) (preempting common-law claims arising from "duty fee" DHL placed on imported goods because they relate to DHL's prices).

Plaintiffs minimize governing caselaw by arguing the FAAAA is "much narrower" than the near-identical preemption language in the Airline Deregulation Act (ADA). (Opp. 9.) Not so. Other than the FAAAA's requirement that the claim must concern the movement of property, the two provisions are interpreted identically. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266 & n.2 (11th Cir. 2023), *abrogated on other grounds*, *Montgomery v. Caribe Transp. II, LLC*, 608 U.S. 219 (2026); *accord Amerijet Int'l, Inc. v. Miami-Dade Cnty.*, 7 F. Supp. 3d 1231, 1238 (S.D. Fla. 2014) ("[T]he FAAA[A] mirrors the ADA's preemption analysis."). Accordingly, caselaw applying the ADA is persuasive here, just as it is in other FAAAA cases.

***Second*****,** Plaintiffs insist the FAAAA does not preempt state common-law claims. (Opp. 4.) That's simply wrong. "[T]here is no question that common-law claims are within the scope of the [FAAAA] preemption clause." *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1025 (9th Cir. 2020); *see Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847, 854 (6th Cir. 2025); *Aspen*, 65

F.4th at 1268; *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 559–60 (7th Cir. 2012). Plaintiffs cite *Wolens* and *Ginsberg*, (Opp. 4), but those decisions held only that breach of contract claims are not preempted because they arise from private agreements rather than state-law duties. *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–30 (1995); *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284–85 (2014). Indeed, *Ginsberg* found plaintiffs' claim alleging breach of implied covenants preempted and held that the preemption language used by the FAAAA "includes common law claims." 572 U.S. at 284, 286.[1]

***Third***, Plaintiffs argue that the FAAAA does not preempt claims that are "based on things happening ***after***" the movement of property. (Opp. 4–5, 8.) That is also wrong. The FAAAA preempts all claims that have a "connection with, or reference to," the listed activities, even "indirect[ly]." *Rowe*, 552 U.S. at 375 (quoting *Morales*, 504 U.S. at 386). Claims arising from fees a carrier imposed for transporting a customer's goods fall within that ambit, even if the carrier billed them ***after*** the goods reached their destination. *E.g.*, *Data Mfg., Inc. v. UPS, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (preempting claims stemming from roughly $350,000 in re-billing fees issued after goods were shipped and invoiced); *Custom Stud, Inc. v. Meadow Lark, Agency*, 566 F. Supp. 3d 950, 956 (D. Minn. 2021) (preempting counterclaims that "derive from [a carrier's] alleged actions leading up to or following the transportation of property").

Plaintiffs rely on the Supreme Court's decision in *Pelkey* to support their purported timing limitation. (Opp. 4–5, 8 (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)).) That case is nothing like this one. There, a vehicle owner sued a towing company that towed his car without his knowledge, auctioned it despite his desire to reclaim it, and sold it without paying him. 569 U.S. at 254–55. The Court held that the FAAAA did not apply because his claims arose "from the storage and disposal of a towed vehicle" and "'related to' neither the 'transportation of property' nor the 'service' of a motor carrier." *Id.* at 260, 266. Here, Plaintiffs challenge tariffs and

[1] Plaintiffs also claim "that unjust enrichment claims in particular are not always preempted under the FAAAA." (Opp. 4 (citing *Solo v. UPS*, 819 F.3d 788, 798 (6th Cir. 2016)).) However, the Sixth Circuit in *Solo* declined to decide the issue because it had not "been fully briefed by both parties and considered by the district court in the first instance." 819 F.3d at 797.

fees that DHL imposed when it imported goods and handled related customs services. The transportation of property is the entire basis for those charges.

Plaintiffs' other cases on this issue are similarly inapposite, denying preemption only where claims had little to do with the transportation of property. In *Fahrenbach v. Green Planet Movers*, the court found that the FAAAA preempted all tort claims other than a count alleging a civil conspiracy between the defendants, conducting no specific factual analysis for that claim. 682 F. Supp. 3d 109, 112 (D. Mass. 2023). In *Ted's of Fayville, Inc. v. Koffi*, the court declined to apply FAAAA preemption to claims that arose when a party that had nothing to do with the shipment of property stored the property after an accident and the brokers failed to pay for the storage. 452 F. Supp. 3d 1, 4 (D. Mass. 2020). Both cases focused their analyses on the claim's tenuous relationship to the movement of property, not on the timing of the carrier's charges or invoices.

***Fourth*,** Plaintiffs argue that the IEEPA tariffs "were not part of the 'price' that was paid for DHL's services." (Opp. 5.) Appellate courts construing the ADA's identical preemption clause have rejected this argument—recognizing that fees, taxes, and duties are "inextricably intertwined" with other portions of the transaction. *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 35 (1st Cir. 2007); *e.g.*, *Sanchez v. Aerovias De Mexico, S.A. de C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2010) (holding that a "tourism tax and other fees and surcharges" were part of the "price" of an airline's services); *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 351 (5th Cir. 2021) (defining "price" as the "sum of money . . . asked or given for something," including portions required by law (citation omitted)).

***Finally*,** Plaintiffs cite one unpublished, out-of-circuit case[2] to argue the FAAAA does not apply because "DHL was acting as a customs broker, not a transportation broker." (Opp. 6 (citing *Jana Brands, Inc. v. C.H. Robinson, Int'l, Inc.*, No. 17-12147-LTS, 2018 WL 6697680 (D. Mass. Dec. 20, 2018).) This argument, too, ignores Plaintiffs' own allegations about DHL's role in handling their goods. In *Jana Brands*, the FAAAA did not preempt the plaintiff's claims because the

[2] Plaintiffs suggest that this Court should ignore the analogous decision in *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66 (D.N.J. 2022), because it is "from another circuit" and "cannot easily be squared with *Jana Brands*." (Opp. 7.) That makes no sense. *Jana Brands* is itself from another Circuit (the First Circuit) and is not even a published decision.

transportation of property "was arranged for and carried out by parties other than [defendants]." 2018 WL 6697680, at *1. There, the defendant merely handled customs paperwork for goods "as they were prepared for export," playing no "role in the physical movement of [the] property." *Id.* at *3. Here, Plaintiffs admit DHL "transported" their goods "through DHL's international shipping services" and provided customs entry services during that process. (Compl. ¶¶ 4, 13, 21, 61, 133.)

### II. Plaintiffs concede that they paid DHL's invoices voluntarily.

If this Court does not dismiss based on preemption, it should dismiss under the voluntary payment doctrine. Plaintiffs allege that DHL invoiced them for the tariffs and fees and admit that they paid those invoices. (Mot. 9–10; Compl. ¶¶ 67–80.) They do not allege protest, duress, or lack of knowledge. Because Plaintiffs' allegations establish that they paid DHL "under a claim of right with knowledge of the facts," *Easter v. City of Orlando*, 249 So. 3d 723, 725 (Fla. Dist. Ct. App. 2018) (citation omitted), the voluntary payment doctrine bars their claims as a matter of law.

Plaintiffs argue that their payments were involuntary because they could not have obtained the goods without paying DHL. (Opp. 11.) This ignores that payments are only involuntary upon a showing of "compulsion or coercion." *State Farm Mut. Auto. Ins. Co. v. LaRocca*, 685 F. Supp. 3d 1354, 1361 (M.D. Fla. 2023); *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 2000) (requiring coercion "of such a degree as to impose a necessity of payment sufficient to overcome the mind and will of a person of ordinary firmness"). Plaintiffs' citation to *Broward County v. Mattel* demonstrates the point: There, the county threatened a lawyer with fines, criminal charges, and an injunction if he did not pay. 397 So. 2d 457, 459–60 (Fla. Dist. Ct. App. 1981); *see also City of Key West v. Fla. Keys Cmty. Coll.*, 81 So. 3d 494, 501 (Fla. App. 2002) (city threatened property owner with lien, fees, discontinuation of utilities). Here, Plaintiffs merely allege that they had "no option but to pay DHL" if they wanted to obtain the goods they ordered. (Compl. ¶ 4.) If that was all it took to make a payment involuntary, virtually every commercial transaction would fit the bill, and the voluntary payment doctrine would collapse.

Plaintiffs also assert that the voluntary payment doctrine is an affirmative defense that cannot be considered on a motion to dismiss. (Opp. 11.) This argument ignores that an affirmative

defense may be resolved in a motion to dismiss if it "clearly appears on the face of the complaint." *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976 (11th Cir. 2015) (citation omitted); *e.g.*, *Sanchez v. Time Warner, Inc.*, No. 98-211-CIV-T-26A, 1998 WL 834345, at *3–4 (M.D. Fla. 1998) (dismissing with prejudice where complaint showed plaintiff voluntarily paid the contested charges). Such is the case here.

**III. The governing contract bars Plaintiffs' unjust enrichment and conversion claims.**

Plaintiffs cannot plead around DHL's Terms and Conditions of Carriage, which apply to every DHL shipment, binding the "Shipper," the "Consignee," and "anyone else with an interest in the Shipment." (Ex. 2, at 1.) Those Terms and Conditions bar Plaintiffs' unjust enrichment claim because they address "the same subject matter," *Al Rushaid Petrol. Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 901 (11th Cir. 2025) (citation omitted), as they require DHL to provide customs services at a fee and allow it to invoice customers for "duties, taxes, or other regulatory charges." (Ex. 2, at 1.) Because Plaintiffs allege no violation of a tort duty "beyond" and "independent of" those contractual obligations, their conversion claim also fails. *Christie v. Royal Carribean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1234 (S.D. Fla. 2020).

Plaintiffs do not dispute the existence, authenticity, or contents of these Terms and Conditions—instead urging this Court to disregard them and ignore their legal consequences. They insist that the Terms and Conditions cannot be considered at the motion to dismiss stage and that DHL failed to file a motion for judicial notice regardless. (Opp. 10.) DHL is not seeking judicial notice, and even if it was, a formal motion is not required. *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014). Instead, the Terms and Conditions may be considered at this stage because they govern the shipments that gave rise to Plaintiffs' claims and are indisputably authentic. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (holding that a court may consider "a document not referred to or attached to a complaint" if it "is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged"); *e.g.*, *Maxcess, Inc. v. Lucent Techs.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (holding a district court properly considered a contract that was integral to the complaint when dismissing unjust enrichment claims).

Plaintiffs also "dispute the existence" of any contract, (Opp. 10 n.5), but that contradicts their original pleadings. Before the cases were consolidated, one set of class representatives alleged that they "entered into contracts" including "Terms and Conditions" that "govern the parties' rights and obligations." (ECF 1, ¶¶ 56–57, No. 0:26-cv-61015.) This Court may "consider prior pleadings . . . when the plaintiff directly contradicts the facts set forth in his original complaint." *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 201 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016) (cleaned up); *Watson v. Wells Fargo Bank, N.A.*, 2020 WL 7054701, at *2 (M.D. Fla. Dec. 2, 2020) (reasoning court may consider prior complaint if "the pleadings were manipulated to avoid a dispositive defense").

## IV. Plaintiffs fail to plausibly allege their claims.

### A. Plaintiffs fail to plausibly allege unjust enrichment or money had and received.

Faced with the many legitimate reasons for DHL's charges, Plaintiffs insist "DHL retained inequitable benefits without providing value." (Opp. 11.) That argument and the unjust enrichment claim fail in light of Plaintiffs' allegations that DHL passed their tariff payments to the government, (Compl. ¶¶ 21, 38), and that DHL provided customs entry and clearance services in exchange for the challenged fees. (Compl. ¶¶ 40–41.)

***Tariffs.*** Plaintiffs contend that "by opposing the present Complaint" DHL "claims" it will not "refund those tariffs to the consumers who ultimately paid them." (Opp. 1.) This is at odds with their concession that DHL has "refunded some tariffs with CBP-calculated interest." (Opp. 10 n.4.) This is also exactly the type of "hypothetical" that was recently rejected by the only court that has ruled on a motion to dismiss in an IEEPA tariff refund action. *Gower v. Costco Wholesale Corp.*, No. 26-2-08898-5 SEA, at 9 (Wash. Sup. Ct. Jul. 17, 2026) (attached as Ex. 1).

Plaintiffs also assert that DHL could not rely on the President's executive orders because those orders had been "questioned and subject to legal challenges from inception." (*See* Opp. 13.) That claim distorts *Pinsky v. Duncan*, where the court held that reliance on the law is reasonable, but speculated that the outcome may change if the defendant knew the law was unconstitutional. 79 F.3d 306, 313 (2d Cir. 1996). That dicta is not binding even in the Second Circuit, which more recently held that defendants "cannot reasonably be deemed to have forecasted whether, when, and

how" the law might change. *Wholean v. CSEA SEIU Local 2001*, 955 F.3d 332, 336 (2d Cir. 2020). Adopting it would expose DHL and other parties to retroactive legal risks for complying with their legal duties whenever a law is held invalid. Instead, this Court should adhere to the rule that parties may rely on the law without fear of liability. (Mot. at 11 (citing cases)); *see Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 271 (3d Cir. 2020) (holding that the plaintiffs "cannot possibly" show that defendants "either knew or should have known" of a statute's "constitutional infirmity" (citation omitted)); *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 942 F.3d 352, 366 (7th Cir. 2019) ("The Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future.").

***Fees.*** Plaintiffs claim that because the IEEPA tariffs were struck down, it "follows that the clearance fees charged to Plaintiffs were unlawful, invalid, and void from the outset." (Opp. 12.) That is both unsupported and incorrect. The *Learning Resources* decision spoke only to the IEEPA tariffs themselves, not to customs processing fees. Regardless, Plaintiffs cannot escape the fact that DHL provided value by handling customs clearance and entry services on their behalf. (Mot. 11–12.) Contrary to their bald claim that DHL "did not provide true value," (Opp. 13), the Consolidated Complaint itself concedes that DHL charged these fees "to process customs entries" related to Plaintiffs' products. (Compl. ¶¶ 40, 61.) Thus, the fees paid for the value of DHL's customs clearance and entry services. (Mot. 11–12 (collecting cases).) Because there is no dispute that DHL provided those services, Plaintiffs cannot assert unjust enrichment based on DHL's customs fees.

**B. Plaintiffs fail to state a claim for conversion.**

In addition to the reasons discussed above in Sections II–III, and Plaintiffs' conversion claim fails because Florida law does not recognize conversion claims based on unsegregated funds. Plaintiffs cite a 17-year-old federal case to contend that conversion lies when "a party pays money to another for a specific purpose, as long as the money is 'delivered at one time, by one act and in one mass.'" (Opp. 16 (quoting *Galstadi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009)).) More recently, however, Florida courts have clarified that a conversion claim "can only be maintained where the money at issue has been kept separate." *Transcapital*

*Bank v. Shadowbrook at Vero, LLC*, 226 So. 3d 856, 864 (Fla. Dist. Ct. App. 2017) (citation omitted). Because "the identifiable requirement is about the specific funds, not about the amount of money," the mere "'fact that the amount is certain does not make an identifiable fund.'" *Johnson v. Chase Bankcard Servs., Inc.*, 582 F. Supp. 3d 1230, 1238 (M.D. Fla. 2022) (citation omitted). Here, Plaintiffs allege only that they paid under specific invoices. They do not allege that the funds were kept separate, such as in a trust, escrow account, or sealed envelope.

**C. Plaintiffs fail to state a claim under FDUTPA.**

Plaintiffs cannot overcome the FDUTPA's safe harbor shielding any "act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1). By their admission, the tariffs were required by law when Plaintiffs paid them and were only invalidated months later. (Compl. ¶¶ 23–31, 43.) That precludes liability under FDUTPA. (Mot. 14–15 (discussing this).) Plaintiffs cite no authority to explain why the invalidation of those tariffs should retroactively strip DHL of safe harbor protection for following the law as it stood at the time.

Regardless, Plaintiffs' FDUTPA should be dismissed because they allege no "deceptive or unfair act" by DHL. (Mot. 14–16.) Plaintiffs attempt to argue that they made a sufficient showing, but the arguments they raise are not in the Complaint. For example, they assert, without any Complaint citation, that DHL engaged in *deceptive* conduct because its invoices created "a misleading impression as to [the] legitimacy" of the tariffs, (Opp. 17), and engaged in *unfair* conduct by violating a "well-established public policy protecting consumers from unlawful fees," (Opp. 17–18). Plaintiffs cannot introduce these new allegations through their Opposition. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015).

**D. A declaratory judgment is not a valid cause of action.**

While Plaintiffs claim that "courts often adjudicate stand-alone claims under the Declaratory Judgment Act," (Opp. 18–19), that is not the law in the Eleventh Circuit. (Mot. at 16–17 (citing cases).) The claim should be dismissed.

## V. A stay is warranted in the alternative.

Should this Court decline to dismiss this case, it should stay proceedings pending the final resolution of DHL's CIT refund action and the ongoing CBP refund process. As Plaintiffs concede, DHL has already begun refunding IEEPA tariff payments to customers as it receives refunds from CBP. (Opp. 10 n.4.) That process is ongoing. Just as DHL has publicly promised, it will continue to remit payments to its customers as it receives them—as it has already done for Plaintiff G-Force Sports. (*Id.*) Issuing a stay so that DHL can complete that process before this case proceeds will "simplif[y] the issues in question" without prejudice to Plaintiffs. *Prisua Eng'g. Corp. v. Samsung Elecs. Co., Ltd.*, 472 F. Supp. 3d 1183, 1185 (S.D. Fla. 2020).

Rather than accept these realities, Plaintiffs raise a litany of perceived obstacles to DHL's ongoing efforts. (*See, e.g.*, Opp. 20 (suggesting DHL has not explained "how it intends to go about refunding the tariffs to consumers," and that DHL "will likely encounter numerous logistical difficulties in doing so.").) Plaintiffs offer no basis to show that these are genuine issues, much less how this putative class action—which will involve lengthy and costly discovery and class certification proceedings—would provide a more efficient vehicle than the process that is already underway. Denying a stay would subject the parties to such unnecessary expenses and waste judicial resources for claims that may ultimately become moot.

## CONCLUSION

DHL's motion to dismiss should be granted, or in the alternative, this case should be stayed pending the resolution of the CIT proceeding.

Dated: September 22, 2026

Respectfully submitted,

/s/ *Lily G.E. Ramirez*

Lily G.E. Ramirez
Elizabeth McIntosh
801 Brickell Avenue, Suite 1500
Miami, FL 33131
Phone: 305-349-2314
EGMcintosh@Venable.com
LGRamirez@Venable.com

Danielle R. Foley (*pro hac vice*)
Elizabeth C. Rinehart (*pro hac vice*)
Emma C. Davis (*pro hac vice*)
600 Massachusetts Avenue, N.W.
Washington, DC 20001
Phone: 202-344-4343
DRFoley@Venable.com
LCRinehart@Venable.com
ECDavis@Venable.com

*Counsel for Defendant DHL Express (USA), Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2026, I caused a copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *Lily G.E. Ramirez*
Lily G.E. Ramirez